UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANDREW B. WHITE,

       Plaintiff,

                **MEMORANDUM & ORDER**

  -against-             CV 14-7370 (GRB)

TOWN OF HUNTINGTON, THOMAS BOCCARD,
in his official and individual capacity, JERRY
RICKERT, in his official and individual capacity,
MARK J. TYREE, in his official and individual
capacity, NEAL SHEEHAN, in his official and
individual capacity, and PATRICIA IRVING, in her
official and individual capacity.

       Defendants.

----------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

 Pending before the Court in this matter, which, upon consent of the parties is before the undersigned for all purposes, is a summary judgment motion filed by defendants. For the reasons that follow, the motion is granted in part and denied in part.

## UNDISPUTED FACTS

 Upon an examination of the parties 56.1 statements, it appears the following facts are undisputed:

 From 2008-2011, plaintiff Andrew White, who is African-American, worked in several temporary positions with the Town of Huntington ("Town"). He was a member of Local 342 of the Long Island Public Service Workers ("Local 342") while employed by the Town. Docket Entry # ("DE") 66 at ¶ 4. As a member of Local 342, plaintiff's terms and conditions of employment were governed by a collective bargaining agreement, which entitled him to certain

1

wage increases and provided that non-permanent, seasonal employees may not work for more than six months at a time. *Id.* at ¶¶ 4–6. White did, in fact, receive certain pay increases. *Id.* at ¶¶ 7, 18. Throughout his time working as a temporary employee for the Town, Thomas Boccard, then-Director of the Department of General Services for the Town, encouraged plaintiff to obtain a Commercial Driver's License ("CDL"), telling him that having one would give him a better chance to get a full-time job with the Town. *Id.* at ¶¶ 9, 25. Plaintiff obtained his CDL in or about 2009. *Id.* at ¶ 26.

Plaintiff's last temporary assignment with the Town ended in October 2011, after which Thomas Boccard offered plaintiff a regular part-time position in the Department of General Services as a laborer at the Dix Hills Ice Rink ("Ice Rink") for 16 hours per week, weekends only. *Id.* at ¶¶ 8–10. William Foley, who is Caucasian, was also hired to work as a 16 hour per week, part-time laborer at the Ice Rink in 2011. *Id.* at ¶¶ 13–14.

Defendant Gerald Riekert was the foreman in charge of the employees working at the Ice Rink, while Mark Tyree, an African-American man, was the Deputy Director of the Department of General Services in 2011. *Id.* at ¶¶ 15–17. After a year of part-time work, plaintiff received a pay increase. *Id.* at ¶ 18. In or about April 2013, after two full-time employees had been hired to work at the Ice Rink, Boccard reduced the hours of both part-time employees, plaintiff and Mr. Foley, from 16 hours per week to 8 hours per week. *Id.* at ¶¶ 20–21. Plaintiff notified Mr. Riekert that he was going to quit his job upon learning that he was being reduced to one day per week. *Id.* at ¶¶ 22, 24.

Plaintiff applied unsuccessfully for a number of full-time positions with the Town, as follows:

1. In or about September 2012, Plaintiff applied for a Heavy Equipment Operator ("HEO") position in the Department of Maritime Services, a position for which 13 people applied.

2

*Id.* at ¶¶ 27, 29.

2. In February 2013, Plaintiff applied for a HEO II position in the Town's Highway Department, for which a total of 37 people applied. *Id.* at ¶¶ 32–33.

3. Plaintiff applied for a Tree Trimmer I position in the Highway Department in February 2013, for which 17 people applied. *Id.* at ¶¶ 37–38.

4. Plaintiff applied for a HEO II position in the Department of General Services in February 2013, for which 33 people applied. *Id.* at ¶¶ 43, 45. Cory Reinard and Joseph Bichko, existing full-time employees of the Town, were ultimately hired for the HEO II positions in the Department of General Services in or about March 2013. *Id.* at ¶¶ 48–49.

5. Plaintiff applied for the position of Animal Control Officer I in the Department of Public Safety in February 2013, for which 18 people applied. *Id.* at ¶¶ 52, 54. The Animal Control Officer I position is a competitive Civil Service position which required the successful applicant to take a Civil Service examination and be selected off a certified Civil Service list. *Id.* at ¶ 55. Plaintiff was not on a Civil Service list for the Animal Control Officer position. *Id.* at ¶ 57. Plaintiff did not take any Civil Service examinations. *Id.* at ¶ 58.

6. Plaintiff applied for an HEO II position in the Department of Environmental Waste Management in September 2013, for which 26 people applied. *Id.* at ¶¶ 60, 62. Michael Caleb, a Town employee, was hired for the HEO II position in Environmental Waste Management in or about October 2013. *Id.* at ¶ 67.[1] Mr. Caleb is African-American. *Id.* at ¶ 69.

7. In September 2013, Plaintiff applied for a HEO I position in the Highway Department, for which 19 people applied. *Id.* at ¶¶ 74, 76.

---

[1] While not relevant here, the parties dispute whether Mr. Caleb was "hired" to or "promoted" to the HEO II position. *See* DE 66 at ¶ 67; DE 69 at ¶ 67.

3

8. Plaintiff applied for a Custodian position in the General Services Department in October 2014, for which 41 people applied. *Id.* at ¶¶ 81, 83. Jamaal Collins was selected to fill the Custodian position in October 2014. *Id.* at ¶ 84. Mr. Collins is African-American. *Id.* at ¶ 85.

Plaintiff never (1) filed a complaint of discrimination with the Town regarding any of his job applications, (2) went to the Personnel office or the Town Equal Employment Opportunity officer to complain about not receiving any full-time positions, nor (3) filed a grievance with the union regarding his failure to be hired for a full-time position. *Id.* at ¶¶ 89–97. He had discussions about the situation with a union representative. DE 69 at ¶ 209. In December 2013, plaintiff filed a charge of discrimination with the New York State Division of Human Rights and the EEOC. DE 66 at ¶¶ 90-91. Plaintiff's charge of discrimination does not allege a claim of retaliation under the New York Human Rights Law or Title VII. *Id.* at ¶ 92.

## LEGAL STANDARD

As the Court has previously observed, an employment discrimination claims is governed by the following analytical framework:

> As an initial matter, a plaintiff bears the burden of establishing a *prima facie* case. *Ruiz v. Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (*citing Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)); *Pathania v. Metro. Museum of Art*, No. CV-11-2119 (JMA), 2013 WL 1182076, at *11 (E.D.N.Y. Mar. 21, 2013); *see Whethers*, 956 F. Supp. 2d at 374-75; *Moultrie v. VIP Health Care Servs.*, No. 08-CV-0457 (DLI)(RML), 2009 WL 750219, at *4 (E.D.N.Y. Mar. 19, 2009). To this end, a plaintiff must prove: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances which give rise to an inference of discrimination. *Broich v. Inc. Vill. of Southampton*, 462 F.Appx. 39, 42 (2d Cir. 2012) (*quoting Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009)); *Pathania*, 2013 WL 1182076, at *12. The required proof at this stage is low and plaintiff will succeed with a *de minimis* showing. *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 467 (2d Cir. 2001); *see, e.g., Panjwani v. Jet Way Security & Investigations, LLC,* No. 13 Civ. 7186 (SLT) (VMS), 2016 WL 3675331, at *9 (E.D.N.Y. Feb. 26,

2016) (concluding plaintiff failed to establish prima facie case of discrimination despite his "*de minimis* burden"). The burden then shifts to the defendant to produce a legitimate, non-discriminatory justification for its action. *Ruiz,* 609 F.3d at 492; *Sethi v. Narod*, 12 F. Supp. 3d 505, 522 (E.D.N.Y. 2014) (*citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07 (1993)); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (describing defendant's burden as "one of production, not persuasion; it 'can involve no credibility assessment'" (*quoting St Mary's Honor Ctr*., 509 U.S. at 509)). "[A]n 'employer's explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Meiri v. Dacon,* 759 F.2d 989, 996-97 (2d Cir. 1985)), *superseded on other grounds by rule*, Fed. R. Civ. P. 37(e); *see, e.g., McDonnell v. Schindler Elevator Corp*., No. 12-CV-4614 (VEC), 2014 WL 3512772, at *9 (S.D.N.Y. July 16, 2014) ("[Defendant's] evidence establishes clear and specific reasons for Plaintiff's termination...."); *Graham v. City of N.Y.*, No. 05-CV-5428 (CBA)(JMA), 2009 WL 909620, at *9-10 (E.D.N.Y. Mar. 31, 2009), *adopted as modified by*, 2009 WL 909620 (E.D.N.Y. Mar. 31, 2009). Like plaintiff's burden at the prima facie stage, defendant's burden here is not especially high. *Sethi,* 12 F. Supp. 3d at 522 (*quoting Hyek v. Field Support Servs.,* 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010)); *Whyte,* 969 F. Supp. 2d at 254.

Upon defendant's articulation of a legitimate, neutral reason for plaintiff's termination, the burden-shifting framework dissipates and the onus is on plaintiff to prove defendant's actions were motivated, at least in part, by discrimination. *See Hongyan Lu v. Chase Inv. Servs. Corp*., 412 F.Appx. 413, 415-16 (2d Cir. 2011); *Joseph v. Owens & Minor Distribution, Inc.,* 5 F. Supp. 3d 295, 308 (E.D.N.Y. 2014) (citing *Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 156 (2d Cir. 2010)); *Zhengfang Liang v. Café Spice SB, Inc*., 911 F. Supp. 2d 184, 205-06 (E.D.N.Y. 2012). To defeat summary judgment, plaintiff "must show circumstances to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir. 1997); *see Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2010); *Pathania,* 2013 WL 1182076, at *12 ("If the employer carries this burden, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981))). Plaintiff's offered evidence must be viewed collectively to determine whether there is an issue of fact as to defendant's true motivation. *See Walsh*, 828 F.3d at 76.

*Baby v. Nassau Healthcare Corp.,* CV 14-3297 (JMA)(GRB), 2017 WL 3279091, at *9–10 (E.D.N.Y. Feb. 6, 2017), *report and recommendation adopted in relevant part*, No. 14-CV-3297 (JMA)(GRB), 2017 WL 3278901 (E.D.N.Y. Aug. 1, 2017). In all other respects, this motion for

summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

## DISCUSSION

*Statute of Limitations*

It is undisputed that certain of plaintiff's claims are barred by relevant statutes of limitations. In particular, because plaintiff did not file his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") until December 11, 2013, his Title VII claims, which require the filing of a charge within 300 days of the relevant act, are barred as to allegations arising prior to February 13, 2013. *See* 42 U.S.C. §12117(a), incorporating 42 U.S.C. §20000e-5(e)(1). Similarly, with respect to his Human Rights Law claims, which require filing within one year of the allegedly discriminatory acts, such claims are barred as to matters occurring before December 11, 2012. *See* Executive Law § 297(5). Finally, although plaintiff asserts failure to hire claims under the Equal Protection Clause brought under § 1983, those claims are governed by a three-year statute of limitations, meaning that all actions occurring before December 11, 2011 are time-barred. *See Li v. City of N.Y.*, 246 F. Supp. 3d 578, 600-01 (E.D.N.Y. 2017) (applying New York State's three-year statute of limitations for personal injury actions to § 1983 claims).

Plaintiff's counsel argues, only with respect to Title VII, that the doctrine of equitable tolling should be invoked to resuscitate these claims. DE 67 at 13. As the United States Supreme Court has held:

> It is hornbook law that limitations periods are "customarily subject to 'equitable tolling,'" *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), unless tolling would be "inconsistent with the text of the relevant statute," *United States v. Beggerly,* 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998*). See also American Pipe & Constr. Co. v. Utah,* 414 U.S. 538,

558–559, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Bailey v. Glover*, 21 Wall. 342, 349–350, 22 L.Ed. 636 (1875). Congress must be presumed to draft limitations periods in light of this background principle. *Cf. National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 589–590, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *United States v. Shabani*, 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

*Young v. United States*, 535 U.S. 43, 49–50 (2002). At the same time, "equitable tolling is only appropriate '[ ] rare and exceptional circumstance[s]' in which a party is 'prevented in some extraordinary way from exercising his rights.'" *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), as amended (July 29, 2003). Instances in which equitable tolling may be properly applied include cases "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period" or those in which a "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002); *see Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.1985). "The virtue of relying on equitable tolling lies in the very nature of such tolling as the exception, not the rule." *Rotella v. Wood*, 528 U.S. 549, 560–61 (2000).

In determining whether to apply the doctrine of equitable tolling, a court must determine "whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass,* 333 F.3d at 80–81 (*quoting Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). Consistent with this test, "[e]quitable tolling is not warranted merely because the plaintiff was unaware of his cause of action." *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F. Supp. 2d 339, 356 (D. Conn. 2012).

Here, plaintiff seeks equitable tolling by asserting that "[p]laintiff was continually informed by Defendants Rickert, Boccard and Tyree that plaintiff would be given a full-time position since

7

he obtained his CDL." DE 67 at 13. Hence, plaintiff argues, the defendants "strung plaintiff along . . . to delay Plaintiff's filing of any formal discrimination complaints." *Id.* at 14. There are several problems with this theory. First, the record evidence cited by plaintiff fails to substantiate the claim. It is true, that in discussing plaintiff's commercial driver's license, plaintiff testified that "[Tyree] would encourage me that just, you know, I was going to get a full-time job." DE 68-1 at 64. At the same time, plaintiff clarified this testimony by adding "They *almost* made me believe that if you have a CDL, you can obtain a job." *Id.* (emphasis added). The record evidence does not support the leap plaintiff seeks.

In addition, even assuming that encouragement regarding possible future opportunities lulled plaintiff into sleeping on his rights, generally such conduct does not warrant the application of equitable tolling. "[O]rdinarily the applicable period starts to run on the employer's commission of the unlawful act and is not tolled pending the employee's realization that the conduct was discriminatory." *Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 48–49 (2d Cir. 1985). Where, as here, plaintiff merely alleges that defendants encouraged him to apply for additional positions, such conduct, standing alone, cannot justify the extraordinary relief sought.

Thus, plaintiff's claims are limited by the statute of limitations periods discussed above. Because this determination is not fully dispositive of plaintiff's claims, however, the Court turns to the remaining arguments.

*Circumstances Giving Rise to an Inference of Discrimination*

On this motion, defendants concede the first three elements of the *McDonald Douglas* test applicable to claims of employment discrimination. The only issue raised is as to the fourth element, namely: whether there is evidence that the employment decisions were made under circumstances giving rise to an inference of discrimination. In response, plaintiff claims that, in certain instances, his qualifications exceeded those of non-minority applicants who successfully

8

obtained the subject positions. As the Second Circuit has held:

> When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Tex. Dep't of Protective & Regulatory Servs.,* 164 F.3d 277, 280-81 (5th Cir.1999); *see also* Fischbach, 86 F.3d at 1183 ("Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates.").

*Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001). Based on this, and similar cases, defendants urge the Court to grant summary judgment on the grounds that plaintiff cannot meet his burden at various junctures.

If the facts were limited to an issue of comparative qualifications, defendants would prevail under the standard set forth in *Byrnie*. However, plaintiff cites evidence regarding other aspects of the hiring process for several jobs, including the failure to interview plaintiff for positions for which he was plainly qualified and the purported creations of an artificial review process to cloud plaintiff's record. *See generally* DE 69, Section D; *see also id.* at ¶¶ 44–50. While the Court has no view on whether such assertions are correct, given the fact that the evidence must be view most favorably toward the non-movant, on this record, plaintiff has proffered sufficient evidence to narrowly survive summary judgment on this issue.

*Constructive Discharge Claims*

Defendants seek summary judgment as to plaintiff's constructive discharge claims based on the undisputed fact that plaintiff resigned from that position. Plaintiff's only pertinent response is that the reduction of the hours of his temporary, part-time job from sixteen to eight hours per week constituted constructive discharge. DE 67 at 25. This argument fails both because this reduction in hours simply cannot meet the standard for a constructive discharge, and there is no evidence that

9

the reduction was based on race. "A claim for hostile work environment requires the plaintiff to show discriminatory conduct that was 'sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment' [and] that her employer deliberately and discriminatorily created work conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Ferraro v. Kellwood Co*, 440 F.3d 96, 100-01 (2d Cir. 2006) (upholding summary judgment) (*quoting Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21(1993) and *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). As the evidence proffered here does not even approach this standard, defendants are entitled to summary judgment as to the constructive discharge claims.

*Retaliation Claims*

It is undisputed that plaintiff has failed to raise his Title VII retaliation claims in conjunction with his EEOC filing, and therefore, defendants assert, this Court lacks jurisdiction as to these claims. As one district judge has observed:

> "The scope of an EEOC investigation cannot reasonably be expected to encompass retaliation when [plaintiff] failed to put [the EEOC] on notice that [plaintiff] had engaged in the type of protected activity that is the predicate to a retaliation claim." *O'Hara v. Mem'l Sloan–Kettering Cancer Ctr.,* 27 F. App'x. 69, 70 (2d Cir.2001) (summary order) (citing *Fitzgerald,* 251 F.3d at 366). Plaintiff's charge failed to alert the EEOC to the existence of the letter or to allege that plaintiff engaged in any protected activity, and therefore it failed to provide the EEOC adequate notice to investigate discrimination upon the basis of both retaliation and national origin or race. *See Conkling v. Brookhaven Sci. Assocs., LLC,* No. 10–CV–4164, 2012 WL 2160439, at *5 (E.D.N.Y. June 12, 2012) ("'[R]etaliation is a theory of liability that is substantively distinct from [an employment] discrimination claim[,]' [and a]ccordingly, a retaliation claim is not 'reasonably related' to an administrative charge simply because the charge asserts a discrimination claim, or refers to the fact that plaintiff suffered some adverse employment action.") (citations omitted) (*quoting O'Hara v. Mem'l Sloan–Kettering Cancer Ctr.,* 27 F. App'x. 69, 70–71 (2d Cir.2001)); *Morris v. David Lerner Assocs.,* 680 F. Supp. 2d 430, 437–38 (E.D.N.Y.2010) ("[A] retaliation claim is not 'reasonably related' to the EEOC charge simply because the EEOC charge refers to the fact that plaintiff suffered an adverse employment action, such as termination.") (collecting cases); *Shepheard v. City of N.Y.,* 577 F.Supp.2d 669, 680 (S.D.N.Y.2008) ("Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of

10

> the agency's investigation cannot be expected to encompass allegations of retaliatory motive."); *Gambrell v. Nat'l R.R. Passenger Corp.,* No. 01 Civ. 6433, 2003 WL 282182, at *8 (S.D.N.Y. Feb. 3, 2003) ("Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive.").

*Dasrath v. Stony Brook Univ. Med. Ctr.*, 965 F. Supp. 2d 261, 269 (E.D.N.Y. 2013). The Circuit has noted that, despite this general principle, "we have been willing to assume that the exhaustion requirement is also met for a subsequent claim 'alleging retaliation by an employer against an employee for filing an EEOC charge.'" *Duplan v. City of N.Y.*, 888 F.3d 612, 622 (2d Cir. 2018). Such "reasonably related" retaliation claims are excused from the exhaustion requirement only if they arise during the pendency of an EEOC investigation or a timely filed federal case." *Duplan*, 888 F.3d at 624.

On this motion, counsel attempts to bootstrap defendants' failure to hire plaintiff for four positions in 2014 that post-date his EEOC filings as evidence of retaliation. Of these positions, only one, a custodial position which plaintiff unsuccessfully sought in October 2014 is even mentioned in the complaint. See DE 27 at ¶ 54. That application process occurred after the conclusion of his EEOC proceeding and prior to the commencement of this action, and therefore not "during the pendency of an EEOC investigation or a timely filed federal case." *Duplan,* 888 F3d at 624. Equally important, the operative complaint is devoid of any specific allegations charging "retaliation by an employer against an employee for filing an EEOC charge." *Id.* In fact, the allegations of the amended complaint specifically attribute plaintiff's failure to obtain the custodial position to discrimination, not retaliation. DE 27 at ¶55. Therefore, plaintiff has failed to exhaust his administrative remedies on the issue of retaliation and does not fall into the exception set forth in *Duplan.* Thus, this Court lacks jurisdiction over plaintiff's retaliation claim, and defendants are entitled to summary judgment.

*Plaintiff's Section 1981 and Monell Claims*

Subsequent to the filing of the briefs herein, the Second Circuit issued the decision in *Duplan*, in which it held that "§ 1981 does not provide a separate private right of action against state actors" and "that 42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981." 888 F.3d at 616, 621. Thus, defendants are entitled to summary judgment as to the second count of the amended complaint, which purports to set forth a cause of action pursuant to §1981.

The third and fourth counts asserted in the amended complaint seek *Monell* liability against the Town under 42 U.S.C. §1983. The Town seeks summary judgment as to these claims, asserting that plaintiff has failed to proffer evidence of a policy or practice that could support the imposition of such liability. Plaintiff does not offer much in response and, in one instance, paradoxically charges that one individual defendant acted "*contrary* to Defendant Town's customs and policies" as proof that the *Monell* claims should survive. DE 67 at 18.[2] In light of the complete absence of evidence that the employment actions at issue were consistent with a municipal policy or practice, the Town is entitled to summary judgment on Counts III and IV.

*Plaintiff's Claims Pursuant to Sections 1985 and 1986*

Defendants seek summary judgment as to plaintiff's claims under 42 U.S.C. §1985, asserting that the purported conspiracy to violate plaintiff's constitutional rights remains unsupported by any evidence of record and is barred by the intra-corporate conspiracy doctrine. *See Varricchio v. Cty. of Nassau*, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010) ("intracorporate

---

[2] Since the only authority attributed to any individual defendant here is the power to hire and fire, an interesting question is raised as to whether such authority renders these individuals policymakers for the purposes of *Monell*. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986) ("The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion"); *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.,* 183 F.3d 734, 739 (7th Cir. 1999)("the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority"). Given the complete dearth of evidence relating to policy and practice in this matter, however, the undersigned need not reach that issue.

conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other"). Further, as to the §1986 claim, such a claim "lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir. 1994). Plaintiff offers no response. Thus, summary judgment is granted as to plaintiff's sections 1985 and 1986 claims, both on the merits and as unopposed.

## CONCLUSION

Based on the foregoing, defendants motion for summary judgment is GRANTED in part and DENIED in part, as set forth above. Counsel are hereby directed to prepare a joint pre-trial order regarding the remaining claims and file the same forthwith.

SO ORDERED.

Dated: Central Islip, New York
October 30, 2018

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge