**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

ANDREW B. WHITE,

                        Plaintiff,                **MEMORANDUM & ORDER**

        v.                              14-cv-7370 (ST)

TOWN OF HUNTINGTON, THOMAS
BOCCARD, JERRY RICKERT, MARK J.
TYREE, NEAL SHEEHAN, and PATRICIA
IRVING, in their official and individual capacities,

                        Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

        Pending before the Court in this matter is a Motion for Summary Judgment filed by

Thomas Boccard ("Boccard"), Mark J. Tyree ("Tyree"), Neal Sheehan ("Sheehan"), Jerry

Riekert ("Riekert"), and Patricia Irving ("Irving") (together, "Individual Defendants"). The

Motion seeks dismissal for lack of personal jurisdiction and summary judgment on Andrew B.

White's ("Plaintiff") claims arising under New York State Human Rights Law ("NYSHRL") and

42 U.S.C. § 1983. Upon consent of the parties, the matter is before the undersigned for all

purposes.

        For the following reasons, dismissal is DENIED and summary judgment is GRANTED

IN PART and DENIED IN PART.

## BACKGROUND

### I.    Factual Background

        Plaintiff, who is African American, began to work for the Town of Huntington (the

"Town") in seasonal positions in 2003. Defs.' Rule 56.1 Statement of Facts ("Def. 56.1") ¶ 1,

Dkt. No. 100; Pl.'s Rule 56.1 Statement of Facts ("Pl. 56.1") ¶¶ 1, A.1, Dkt. No. 109. From 2008

to 2011, Plaintiff worked in several temporary positions with the Town. Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2. While working for the Town, Plaintiff was a member of Local 342 of the Long Island Public Service Workers. Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3. While Plaintiff worked for the Town, Boccard encouraged Plaintiff to obtain a Commercial Driver's License ("CDL") and told Plaintiff that having a CDL would improve his chances of securing a full-time position with the Town. Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18. Plaintiff obtained his CDL in or about 2009. Def. 56.1 ¶ 19; Pl. 56.1 ¶ 19.

In November 2011, Boccard was the Director of the Town's Department of General Services. Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9. At that time, Boccard offered Plaintiff a permanent, part-time laborer position in the Department of General Services. Def. 56.1 ¶¶ 9-10; Pl. 56.1 ¶¶ 9-10. In this role, Plaintiff worked sixteen hours per week, weekends only, at the Dix Hills Ice Rink ("Ice Rink"). Def. 56.1 ¶ 10; Pl. 56.1 ¶ 10. Riekert was the foreman in charge of employees at the Ice Rink. Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13. In September 2012, Riekert evaluated Ice Rink employees. Pl. 56.1 ¶¶ C.44, C.49. In April 2013, Plaintiff had his hours at the Ice Rink reduced to eight hours per week. Pl. 56.1 ¶ A.20. At that point Plaintiff left his position at the Ice Rink. Def. 56.1 ¶ 17; Pl. 56.1 ¶¶ 17, A.20. Plaintiff was the only African American working at the Ice Rink during the period of November 2011 to April 2013. Pl. 56.1 ¶ A.24. While Plaintiff worked at the Ice Rink, Plaintiff also worked as a truck driver for a company called Magnum Cesspool. Pl. 56.1 ¶ A.17.

Between 2008 and 2014, Plaintiff unsuccessfully applied to a variety of permanent, full-time positions with the Town. *See* Pl. 56.1 ¶¶ D.51-D.207. In December 2013, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR") against the Town. Pl. 56.1 ¶ E.220. In June 2014, NYSDHR made a determination of probable cause

regarding Plaintiff's discrimination claims against the Town. Pl. 56.1 ¶ 221. Plaintiff did not file

a grievance with his union. Pl. 56.1 ¶ E.218.

The following applications relate to Individual Defendants' Motion for Summary

Judgment.[1]

### a.  February 2013, Department of General Services, Heavy Equipment Operator ("HEO") II

In February 2013, Plaintiff applied for available HEO II positions in the Department of

General Services. Def. 56.1 ¶ 36; Pl. 56.1 ¶ 36. Plaintiff was interviewed for the position. Def.

56.1 ¶ 39; Pl. 56.1 ¶ 39. Boccard and Tyree were present for the interview. Def. 56.1 ¶ 40; Pl.

56.1 ¶ 40. At the time, Boccard was the Director of the Department of General Services and

Tyree was Deputy Director of that department. *See* Def. 56.1 ¶ 40. Cory Reinard ("Reinard") and

Joseph Bichko ("Bichko") were hired to the two available HEO II positions in the Department of

General Services. Def. 56.1 ¶ 41; Pl. 56.1 ¶ 41. Plaintiff did not speak with Boccard about the

decision to select Reinard and Bichko for the open positions. Def. 56.1 ¶ 44; Pl. 56.1 ¶ 44.

Plaintiff notes that both Bichko and Reinard are Caucasian. Pl. 56.1 ¶ D.139.

### b.  February 2013, Highway Department, HEO II

In February 2013, Plaintiff applied for a HEO II position in the Highway Department.

Def. 56.1 ¶ 25; Pl. ¶ 25. Plaintiff acknowledges that William Naughton ("Naughton") was at this

time the Superintendent of the Highway Department and selected the applicant to fill this

position. Pl. 56.1 ¶ 27. In March 2013, Plaintiff received a letter from Irving that stated Plaintiff

was not selected for the position. Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28. At the time, Irving was the

---

[1] The Court omits from the Factual Background a description of the Department of Public Safety, Animal Control Officer I position, to which Plaintiff applied in February 2013. Plaintiff concedes that the record does not show he was qualified for this position at the time he applied. Opp. at 16.

Deputy Superintendent. *See* Def. 56.1 ¶ 28. Plaintiff neither met nor spoke with Irving. Def. 56.1 ¶29; Pl. 56.1 ¶ 29. Robert J. Esposit ("Esposit") was selected for the position. Pl. 56.1 ¶ D.148. Plaintiff notes that Esposit is Caucasian. *Id.* ¶ D.151.

### c. February 2013, Highway Department, Tree Trimmer I

In February 2013, Plaintiff applied for a Tree Trimmer I position in the Highway Department. Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30. Here too Plaintiff acknowledges that Naughton was the Superintendent of Highways and selected the applicant to fill this position. Pl. 56.1 ¶ 33. In March 2013, Plaintiff received a letter from Irving that notified him he was not selected for the position. Def. 56.1 ¶ 34; Pl. 56.1 ¶ 34. Again, Irving was the Deputy Superintendent. *See id.* Plaintiff did not speak with Irving about the Tree Trimmer I position. Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35. Sean Gerolami ("Gerolami") was selected for the position. Def. 56.1 ¶ 32; Pl. 56.1 ¶ 32. Plaintiff notes that Gerolami is Caucasian. Pl. 56.1 ¶ D.162.

### d. September 2013, Department of Environmental Waste Management, HEO II

In September 2013, Plaintiff applied for a HEO II position in the Department of Environmental Waste Management. Def. 56.1 ¶ 53; Pl. 56.1 ¶ 53. At that time, Sheehan was the Director of the Department of Environmental Waste Management. Def. 56.1 ¶ 58; Pl. 56.1 ¶ 58. Plaintiff neither met nor spoke with Sheehan at any point. Def. 56.1 ¶ 59; Pl. 56.1 ¶ 59. Sheehan selected Michael Caleb ("Caleb") for the position. Def. 56.1 ¶ 61; Pl. 56.1 ¶ 61. Caleb is African American. Def. 56.1 ¶ 62; Pl. 56.1 ¶ 62.

### e. September 2013, Highway Department, HEO I

In September 2013, Plaintiff applied for available HEO I positions in the Highway Department. Def. 56.1 ¶ 67; Pl. 56.1 ¶ 67. Again, Plaintiff acknowledges that Naughton was the Superintendent of Highways and that Naughton filled the available HEO I positions. Pl. 56.1 ¶

4

71. In October 2013, Plaintiff received a letter from Irving that advised Plaintiff he was not selected. Def. 56.1 ¶ 72; Pl. 56.1 ¶ 72. Again, Irving was the Deputy Highway Superintendent at the time. *See id.* Plaintiff never spoke to Irving about the HEO I positions. Def. 56.1 ¶ 71; Pl. 56.1 ¶ 71. Anthony Nieves ("Nieves") and Darryl Rose ("Rose") were hired for the two openings. Pl. 56.1 ¶ 70. Plaintiff notes that Nieves is Hispanic and Rose is Caucasian. Pl. 56.1 ¶ D.176.

### f.   October 2014, Department of General Services, Custodial Worker

In October 2014, Plaintiff applied for a Custodian position in the Department of General Services. Def. 56.1 ¶ 74; Pl. 56.1 ¶ 74. Jamaal Collins ("Collins") was selected for the position. Def. 56.1 ¶ 77; Pl. 56.1 ¶ 77. Collins is African American. Def. 56.1 ¶ 78; Pl. 56.1 ¶ 78.

## II.   Procedural History

Plaintiff commenced this action on December 18, 2014. *See generally* Compl., Dkt. No. 1. Pursuant to an order of this Court, Plaintiff filed his Amended Complaint on December 2, 2015. Order dated November 18, 2015, Dkt. No. 26; *see generally* Am. Compl., Dkt. No. 27. In his Amended Complaint, Plaintiff asserts against the Town and Individual Defendants causes of action arising under: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 42 U.S.C. § 1983; *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); 42 U.S.C. § 1985; 42 U.S.C. § 1986; § 296, New York State Human Rights Law ("NYSHRL"); Suffolk County Human Rights Law; and a claim for negligent infliction of emotional distress. *See generally* Am. Compl.

Over the course of this litigation, Plaintiff withdrew its §§ 1985, 1986 and negligent infliction of emotional distress claims. *See* Pl.'s Mem. Opp. Town's Mot. Summ. J. at 25, Dkt. No. 67. After the Honorable Gary R. Brown, then-presiding, ruled on the Town's summary

5

judgment motion,  Plaintiff's Title VII, NYSHRL, and § 1983 claims for discrimination on the basis of race for failure to hire remained. *See generally* Order on Town's Mot. Summ. J., Dkt. No. 89.

Around the time the Town's Motion for Summary Judgment was being briefed and decided, default was entered against Individual Defendants. Entry of Default, Dkt. No. 72. Individual Defendants moved to vacate. *See generally* Individual Defendants' Motion to Vacate Clerk's Entry of Default, Dkt. No. 74. After ruling on the Town's summary judgment motion, then-Magistrate Judge Brown granted Individual Defendants' Motion to Vacate, stating "[t]o avoid prejudice to plaintiff, the Individual Defendants will not be permitted to re-litigate any of the issues previously resolved on summary judgment." Order dated February 15, 2019.

Individual Defendants now move for summary judgment on the claims that remain against them. *See generally* Individual Defs.' Notice Mot. Summ. J., Dkt. No. 98. Specifically, Individual Defendants assert that this Court lacks personal jurisdiction over them, seek summary judgment on Plaintiff's NYSHRL and § 1983 claims, and assert that Individual Defendants are entitled to qualified immunity.[2] Individual Defs.' Mem. Supp. Summ. J. ("Mot.") at 4, 7, 16, 17, Dkt. No. 99. Individual Defendants' Motion for Summary Judgment has been fully briefed and received by the Court. *See generally* Pl.'s Mem. Opp. Summ. J. ("Opp."), Dkt. No. 108; Individual Defs.' Reply Mem. Supp. Summ. J. ("Reply"), Dkt. No. 112.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] "[I]ndividuals are not subject to liability under Title VII." *Patterson v. Cty. Of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks, citations omitted). Thus, the parties have not here addressed Plaintiff's claims under Title VII, which apply only to the Town.

56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996). Nonetheless, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

## DISCUSSION

### I.   Personal Jurisdiction

Individual Defendants claim this Court lacks personal jurisdiction over them due to improper service. *See* Mot. at 4-7. The Affidavits of Service show that each of Individual Defendants was served by delivery of a copy of the Summons and Complaint to the Huntington Town Clerk's office in Huntington Town Hall, at 100 Main Street, Huntington, New York. *See* Summonses Returned Executed, Dkt. Nos. 6-10. Individual Defendants assert that "Huntington Town Hall was not the 'actual place of business' of" Boccard, Riekert, or Irving. Mot. at 5.

7

While both Tyree and Sheehan "worked at Town Hall in January 2015, . . . neither of them received a copy of the Summons and Complaint personally or via mail in January 2015" and neither of them "authorized anyone in the Town Clerk's office to accept service of process on their behalf." *Id.* at 6. Individual Defendants additionally claim they were not served copies of the Amended Complaint. *Id.* Plaintiff did not file affidavits of service for the Amended Complaint. Plaintiff argues that "serving the Town Clerk was sufficient as the 'actual place of business' since all [Individual] Defendants were employed by" the Town. Opp. at 12. Plaintiff further notes that each of Individual Defendants, except Irving, "appeared for a deposition that was pursuant to notice, not subpoena." *Id.*

The Federal Rules of Civil Procedure permit service of process in accordance with the law of the "state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). New York law allows a plaintiff to serve process by

> delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

N.Y.C.P.L.R. § 308(2). New York law does not require that the person served be "officially authorized to accept service on behalf of the defendant." *Pub. Adm'r of Cty. Of N.Y. v. Markowitz*, 163 A.D.2d 100, 100-01 (N.Y. App. Div. 1990) (citing *Oxhandler v. Sekhar*, 88 A.D.2d 817 (N.Y. App. Div. 1982)). "The term 'actual place of business' has been defined as a place where the defendant is regularly physically present or regularly transacts business." *Sajimi v. City of N.Y.*, No. 07-CV-3252 (ENV) (MDG), 2011 WL 135004, at *3 (E.D.N.Y. Jan. 3, 2011)

(citation omitted). At the time this litigation commenced, the Federal Rules allotted plaintiffs 120 days to serve defendants. Fed. R. Civ. P. 4(m).[3]

In *Schwasnick v. Fields*, the Court held that service on the Town Clerk is sufficient where defendant town employees' "'actual place of business' is in the same building" as the Town Clerk's office. *Schwasnick v. Fields*, No. 08-CV-4759 (JS) (ARL), 2010 WL 2679935, at *3 (E.D.N.Y. June 30, 2010). Accordingly, service of the Complaint on the Huntington Town Clerk's office was sufficient as to Tyree and Sheehan. Though there is nothing to indicate that Tyree and Sheehan were served copies of the Amended Complaint, it is undisputed that Tyree and Sheehan both appeared in depositions by notice. *See generally* Harris-Marchesi Decl., Ex. H ("Sheehan Dep."), Dkt. No. 111-1; Harris-Marchesi Decl., Ex. J ("Tyree Dep."), Dkt. No. 111-1. The same is true for Boccard and Riekert, even though they were not served the copies of the Complaint at their actual places of business. *See generally* Harris-Marchesi Decl., Ex. C ("Boccard Dep."), Dkt. No. 111-1; Harris-Marchesi Decl., Ex. E ("Riekert Dep."), Dkt. No. 111-1. "Only a party to litigation may be compelled to give testimony pursuant to a notice of deposition." *U.S. v. Afram Lines, Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

"[U]ndue delay in challenging personal jurisdiction by a motion to dismiss may constitute a waiver." *Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 198 (E.D.N.Y. 2011) (citing *Carualo v. A C and S, Inc. et al.*, No. 93 Civ. 3752, 1998 WL 633684, at *3 (S.D.N.Y. Sept. 15, 1998) ("The responsive pleadings do not preserve the defense [of insufficiency of process] in perpetuity.")). Even though four of the Individual Defendants were deposed in May and June of 2017, Individual Defendants did not identify the issue of personal jurisdiction until their Motion to Vacate in April 2018. *See generally* Boccard Dep.; Tyree Dep.; Sheehan Dep.; Riekert Dep.;

---

[3] A 2015 amendment to Federal Rule of Civil Procedure 4(m) reduced this time period to 90 days.

Mem. Supp. Mot. Vacate, Dkt. No. 74. While Individual Defendants preserved the personal jurisdiction defense in their Answer to the Amended Complaint, they did not seek dismissal on such grounds until the instant motion. *See* Individual Defs.' Answer Am. Compl. ¶ 145, Dkt. No. 91. Further, counsel for the Town, who ultimately also appeared as counsel for Individual Defendants, acknowledged the issue of personal jurisdiction about three and a half years before Individual Defendants sought dismissal in their Motion for Summary Judgment. *See* Town's Answer Am. Compl. ¶ 151 (claiming Court "lacks jurisdiction over some or all of the Defendants due to improper service of process"), Dkt. No. 40; Notice of Appearance, Dkt. No. 73. As Individual Defendants contend, Plaintiff has been on notice of improper service and the related issue of personal jurisdiction since the Town filed its Answer to the Amended Complaint; however, the Town's Answer was filed more than seven months after the Amended Complaint and notice thus arose after the statutory 120 day service period ended. Mot. at 4 n. 2; *see generally* Am. Compl. (filed December 2, 2015); Town's Answer Am. Compl. (filed July 7, 2016). The instant action is therefore distinguishable from *Sajimi*, to which Individual Defendants analogize in their Motion for Summary Judgment. *Sajimi*, 2011 WL 135004, at *4 (defendants noted improper service on an individual defendant at a conference "within the 120 [day] period allowed by Rule 4(m) for service"); *see* Mot. at 6. Individual Defendants "should have moved at the earliest possible opportunity to dismiss the complaint." *Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985).

In sum, four of the Individual Defendants participated in discovery about two and a half years before seeking dismissal for lack of personal jurisdiction and all of the Individual Defendants acknowledged lack of personal jurisdiction in their Motion to Vacate more than a year and a half before seeking dismissal for personal jurisdiction. While Individual Defendants

technically preserved the defense by raising it in their Motion to Vacate and Answer to Plaintiff's Amended Complaint, they waived that defense by failing to seasonably assert it. *See, e.g.*, *Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1300-03 (2d Cir. 1990) (finding defendant waived defense of lack of personal jurisdiction due to improper service where defendant asserted defense in motion between three and four months after defense was preserved in timely answer); *Love*, 823 F. Supp. 2d at 198-99 (finding undue delay and waiver of defense where defendants informally asserted improper service defense "at least one year after the action was commenced"); *Caruolo*, 1998 WL 633684, at *2-4 (finding defendant waived defense of lack of jurisdiction where defendant's attorney timely received amended complaint and defendant waited more than five years to move to dismiss for improper service); *Burton*, 106 F.R.D. at 480 ("It is well settled that lack of personal jurisdiction is a privileged defense that can be waived by 'failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct'" (citing *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 168, 168 (1939))). The Court thus denies Individual Defendants' motion to dismiss for lack of personal jurisdiction due to improper service.

## II.   NYSHRL Claim

Plaintiff alleges Individual Defendants discriminated against Plaintiff on the basis of race and color by failing to hire Plaintiff for available full-time, permanent positions. Am. Compl. ¶ 118. In doing so, Plaintiff asserts that Individual Defendants violated NYSHRL. *Id.* ¶ 119.

NYSHRL makes it an unlawful, discriminatory practice for an employer to refuse to hire an individual on the basis of race or color. NYSHRL § 296(1). Courts assess discrimination claims brought under NYSHRL using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) to analyze Title VII actions. *Vivenzio v. City of Syracuse*,

611 F.3d 98, 106 (2d Cir. 2010). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *Ruiz v. Cty. Of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)). To do so, a plaintiff must show: "(1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio*, 611 F.3d at 106. "A plaintiff's burden of establishing a *prima facie* case is *de minimis*." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (citing *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203-04 (2d Cir. 1995)). After a plaintiff establishes a *prima facie* case, the employer must "come forward with a nondiscriminatory reason for the decision not to hire plaintiff." *Vivenzio*, 611 F.3d at 106. "The defendant's burden 'is not a particularly steep hurdle.'" *Sethi v. Narod*, 12 F. Supp. 3d 505, 522 (E.D.N.Y. 2014) (citing *Hyek v. Field Support Sevs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010)). If the employer articulates a legitimate reason for its decision, the plaintiff has an opportunity to show the "employer's proffered reason is a pretext for an impermissible motivation." *Vivenzio*, 611 F.3d at 106 (internal quotation marks omitted) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Ordinarily, individual liability under NYSHRL § 296(1) is "limited to . . . supervisors, who themselves, have the authority to hire and fire employees. *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 199 (E.D.N.Y. 2007) (internal quotation marks, citation omitted). Nonetheless, "a co-worker who lacks the authority to either hire or fire the plaintiff may still be held liable as an aider-abettor under NYSHRL § 296(6) if he actually participates in the conduct giving rise to

12

a discrimination claim." *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 493 (E.D.N.Y. 2015) (internal quotation marks, brackets omitted) (citing *Feingold v. New York,* 366 F.3d 138, 158 (2d Cir.2004)).

As an African American, Plaintiff is part of a protected class. Further, it is undisputed that Plaintiff was not hired for any of the positions at issue. Individual Defendants concede that Boccard, Tyree, and Sheehan "arguably had authority to hire employees within their respective departments." Opp. 18. The Court notes that plaintiff does not submit direct evidence of discriminatory animus on the part of any of the Individual Defendants.

### a. Boccard

Individual Defendants argue Plaintiff "has failed to produce sufficient evidence to demonstrate that [Boccard] engaged in discriminatory conduct" in his decision not to hire Plaintiff for the Department of General Services, HEO II positions. Mot. at 18. Plaintiff disagrees. *See* Opp. at 17.

This HEO II position involved operating a Zamboni at the Ice Rink. Boccard Dep. at 75:21-23, 84:8-21. Plaintiff met the minimum qualifications for the HEO II positions for which he applied in February 2013. Tyree Dep. at 40:17-41:24. Plaintiff contends he was "more qualified . . . [than] the Caucasian males hired into" the HEO II positions. Opp. at 17. "In the failure to hire context, an employer's choice of a less qualified employee not from plaintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination." *Szewczyk v. City of N.Y.*, 15-CV-918 (MKB), 2016 WL 3920216, *6 (E.D.N.Y. July 14, 2016) (collecting cases) (internal quotation marks, brackets, citation omitted). However, to raise an inference of discrimination based upon comparative qualifications for a position, the plaintiff's credentials must be "so superior to the credentials of the person selected for the job

that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Szewczyk v. Saakian*, 774 F. App'x 37, 40 (2d Cir. 2019) (summary order) (citing *Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted), *superseded in part and on other grounds by* Fed. R. Civ. P. 37(e)). The record indicates that both Reinard and Bichko were employees of the Town when they were selected for the HEO II positions. Boccard Dep. at 74:16-20, 79:11-80-7. Reinard had been a full-time employee of the Town since 2007, holding titles including Auto Equipment Operator. Aff. of Lisa Baisley ("Baisley Aff.") ¶ 21, Dkt. No. 107. Bichko had been a full-time employee of the Town since 2009 and an ice hockey instructor and rink guard at the Ice Rink. *Id.* Both were recommended for the HEO II positions. *Id.* at 76:18-77:1, 80:15-24. While the position required a Class B CDL, Reinard had a Class A CDL and Bichko had a Class B CDL with air brakes. *Id.* at 73:5-15; Tyree Dep. at 23:20-24-4, 45:21-24, 47:10-12; Harris-Marchesi Decl., Exs. TT, UU. Although the record indicates Plaintiff's Class A CDL is more advanced than Bichko's CDL, it is unclear whether this or any other difference in qualifications is so great that no reasonable employer could have selected Reinard or Bichko over Plaintiff. Tyree Dep. at 24:6-7; Harris-Marchesi Decl. Ex. SS, Dkt. No. 111-2.

Nonetheless, a "legally insufficient disparity in qualifications, when combined with other evidence, could create a dispute of material fact." *Moy v. Perez*, 15cv32, 2016 WL 5239611, at *5 (S.D.N.Y. Sept. 21, 2016) (citing *Byrnie*, 243 F.3d at 104). The Court thus examines Plaintiff's allegations that Individual Defendants conducted "unprecedented evaluations" as "a pretext for failing to hire Plaintiff full-time by misrepresentation of Plaintiff's qualifications and work ethic." Opp. at 23. Individual Defendants argue that the evaluations were not

14

unprecedented and that Boccard did not consider the evaluations when assessing Plaintiff's application. Reply at 6; *see* Boccard Dep. at 125:6-19.

The Second Circuit has stated that "[d]epartures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision." *Weinstock*, 224 F.3d at 45 (internal quotation marks, emphasis omitted) (citing *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997)); *see also Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984) (citing departures from procedural regularity as a means available to "plaintiffs to show that forbidden purposes lurk in a tenure decision"). A review of the record reveals the irregularity of, as well as factual ambiguities concerning, the evaluations. First, the record suggests an absence of policy concerning evaluations. Riekert claims evaluations were given periodically but at no specific intervals. Riekert Dep. 32:9-16. When asked whether the Town ever required the Department of General Services to perform an annual review of its employees, Boccard responded, "No." Boccard Dep. at 109:11-16. Plaintiff states that the union liaison informed him the Town "doesn't do evaluations." Harris-Marchesi Decl., Ex. G ("White Dep.") at 73:10-13, Dkt. No. 111-1. Second, Boccard and Riekert dispute who decided to conduct the evaluations. In his deposition, Riekert claims he "was asked by Tom Boccard" to perform a written evaluation of Ice Rink employees. Riekert Dep. at 33:3-5. To the contrary, Boccard denies having ever directed any of his employees in foreman or manager positions to perform written evaluations of their employees. Boccard Dep. at 109:17-110:3. Further, Boccard states that Riekert decided to perform the evaluations because "it was something that his foreman used to do for the men." *Id.* At 110:20-111:4. Third, Plaintiff and Riekert claimed that Riekert evaluated all employees under his supervision. White Dep. at 73:14-16; Riekert Dep. at 33:15-17. Boccard claimed Riekert did not. Boccard Dep. 111:9-18. The foregoing inconsistencies

15

demonstrate that the origins of the evaluation as well as the details of its administration are uncertain. In addition, the record reveals that Boccard actually saw Plaintiff's and other Ice Rink employees' evaluations. *See* Boccard Dep. at 110:4-111:25. Accordingly it is possible that the irregular evaluations affected Boccard's hiring decision.

Taken together and viewed in the light most favorable to Plaintiff, the comparative qualifications of the applicants, the procedural irregularities and uncertainties surrounding the evaluations, and the fact that Boccard saw Plaintiff's evaluation give rise to a dispute of material fact as to whether the decision not to hire Plaintiff was improperly influenced by discriminatory motives. Thus, the Court denies Individual Defendants' Motion for Summary Judgment on Plaintiff's NYSHRL claim against Boccard.

### b. Tyree

As with Boccard, Individual Defendants argue Plaintiff "has failed to produce sufficient evidence to demonstrate that [Tyree] engaged in discriminatory conduct with regard to the hiring issues in question." Mot. at 18. Plaintiff contends he alleged facts sufficient to show that Tyree engaged in discriminatory behavior in connection with his involvement in hiring for the HEO II and Custodial Worker positions in the Department of General Services. Opp. at 8-9, 18-19, 21.

It is undisputed that Tyree was present at Plaintiff's interview for the HEO II positions, to which Plaintiff applied in February 2013. The record also shows that Boccard would consult Tyree before making hiring decisions. Tyree Dep. 56:12-20. Although Boccard held the authority to hire Reinard and Bichko over Plaintiff, Tyree, who lacked that authority, can still be liable for discriminatory conduct related to those hiring decisions as an aider and abettor. *See* NYSHRL § 296(6). A co-worker may be found to be an aider and abettor if he "actually participates in the conduct giving rise to the discrimination claim." *Feingold*, 366 F.3d at 158

16

(internal quotation marks, citation omitted). The Court notes that "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015); *Redd v. N.Y. State Div. of Parole*, 923 F. Supp. 2d 371, 392 (E.D.N.Y. 2012). Because the Court found sufficient issues of fact to deny summary judgment as to Boccard's liability, it will consider whether Tyree actually participated in the February 2013 hiring process and whether he might be liable under NYSHRL as an aider and abettor.

Given that courts in this Circuit have found personal involvement in § 1983 cases involving similar circumstances, a trier of fact could find that Tyree's presence at Plaintiff's interview for the HEO II positions constitutes actual participation under NYSHRL. *See Barnes v. Ross*, 926 F. Supp. 2d 499, 508 (S.D.N.Y 2013) (defendant personally involved where defendant interviewed plaintiff in connection with allegedly discriminatory mental health treatment); *Petrosky v. N.Y. State Dept. of Motor Vehicles*, 72 F. Supp. 2d 39, 64 (N.D.N.Y. 1999) (defendant personally involved where defendant gave plaintiff oral examination during job interview). Plaintiff does not, however, allege Tyree personally participated in the evaluations. Thus, the Court will not consider the purportedly pretextual evaluations in connection with Tyree's liability as an aider and abettor. As previously discussed, Plaintiff has failed to show that his qualifications for the HEO II positions were so superior to those of Reinard and Bichko that no reasonable employer would hire them over him. Accordingly, the Court finds plaintiff cannot prove a *prima facie* case of discrimination against Tyree based on his limited involvement in the HEO II hiring process.

Individual Defendants concede that Tyree was directly involved in hiring for the Department of General Services, Custodial Worker position to which Plaintiff applied in October

17

2014. Mot. at 18-19. There was no minimum experience requirement for the custodial worker position. Tyree Dep. at 27:10-13. Tyree selected Collins for the position based upon a recommendation that Tyree received on Collins' behalf. *Id.* at 36:9-12. It has been established that Collins, like Tyree and Plaintiff, is African American. Tyree Dep. at 85:24-86:2.

Plaintiff contends that Collins' recommendation came from a "family connection with Defendant Town" and Collins was thus "safe." Opp. at 22. Plaintiff further notes that Collins was hired after NYSDHR issued its finding of probable cause against the Town, and avers that "an African American applicant would not otherwise be hired by Defendant Town unless said applicant has a recommendation from a Town Board member or a ranking Town Official." Opp. at 23. According to Tyree, the Department of General Services does not interview applicants for Custodial Worker positions. Tyree Dep. at 27:5-9, 33:2-5. Rather, the Department of General Services often selects Custodial Workers based upon recommendations. *Id.* at 27:10-28:16. To raise an inference of discrimination based upon disparate treatment, a plaintiff must "show that the employer treated him or her 'less favorably than a similarly situated employee' outside of the protected group." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Plaintiff cites no instances of applicants outside of his protected class being hired as Custodial Workers without recommendations. To the contrary, the record shows that Dennis Kropp, who is Caucasian, was hired as a Custodial Worker in 2011 based on a recommendation. Boccard Dep. at 58:12-60:21.[4] Additionally, Plaintiff's claim that Collins was recommended by a family connection lacks support. In Plaintiff's deposition, Plaintiff was not able to recall who told him that Collins had a family connection nor was Plaintiff able to identify the connection. White Dep. at 59:19-60:3.

---

[4] The Court notes Dennis Kropp is misidentified as Dennis "Croft" in Boccard's transcript.

18

Considering the above, the Court finds that Plaintiff has not created a dispute of material fact with regard to Tyree's selection of Collins over Plaintiff. Courts in the Eastern District of New York "draw an inference against discrimination where the person taking the adverse action is in the same protected class as the affected employee."[5] *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 319 (E.D.N.Y. 2014). Courts have also stated that "[i]t is 'extremely difficult, if not practically impossible' to establish discrimination where, as here, plaintiff was passed over so an employer can hire another member of plaintiff's same protected class." *Rodriguez v. N.Y.C. Health and Hospitals Corp.*, No. 14 Civ. 4960 (BMC), 2015 WL 5229850, at *5 (E.D.N.Y. Sept. 8, 2015) (citation omitted); *see also Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010) (summary order) (affirming summary judgment in favor of defendants and finding no inference of discrimination where terminated plaintiff and her replacement were both African American females); *Johnson v. N.Y.C. Dept. of Educ.*, 39 F. Supp. 3d 314, 323 (E.D.N.Y. 2014) ("Where no [other] evidence giving rise to an inference of discrimination has been presented, the fact that a plaintiff is replaced with an individual within his protected class undermines his attempt to establish a prima facie case of discrimination" (internal quotation marks, citation omitted)). Plaintiff fails to allege facts to overcome these inferences.

Given that there are no outstanding issues of fact to suggest Tyree discriminated against Plaintiff, Individual Defendants' Motion for Summary Judgment on Plaintiff's NYSHRL claim against Tyree is granted.

### c. Sheehan

---

[5] The Court acknowledges Plaintiff's argument that "discrimination based on race" may implicate "issues of national origin." Opp. at 18. However, Plaintiff fails to provide evidence to suggest Tyree discriminated against Plaintiff on the basis of national origin.

As noted, Individual Defendants concede that Sheehan "arguably had authority to hire" for the HEO II position in the Department of Environmental Waste Management, to which Plaintiff applied in September 2013. Mot. at 18. However, Individual Defendants also claim that "the evidence in the record fails to establish that [Sheehan] violated [NYSHRL] with regard to the 2013 HEO II hiring." *Id.* at 19. In his brief, Plaintiff indicates that Sheehan hired Caleb for the HEO II position. Opp. at 9-10. The undisputed facts do not, however, support a finding that Plaintiff established a prima facie case.

The person selected for this HEO II position would drive a garbage truck. Sheehan Dep. at 49:9-15. Plaintiff shows that he was qualified for the HEO II position. While the position required a Class B CDL, Plaintiff had a more advanced Class A CDL. *See* Sheehan Dep. at 60:8-61:15, 65:11-16; Harris-Marchesi Decl., Ex. NNN, Dkt. No. 111-1. Nonetheless, the facts do not give rise to an inference of discrimination in Sheehan's decision to hire Caleb over Plaintiff. Like Plaintiff, Caleb is African American. Sheehan Dep. at 74:24-75:2. As discussed above, the fact that a plaintiff is not hired for a position that is instead awarded to a member of plaintiff's protected class weighs against that plaintiff's discrimination claim. *See Fleming*, 371 F. App'x at 117; *Rodriguez*, 2015 WL 5229850, at *5; *Johnson*, 39 F. Supp. 3d at 323. Plaintiff cites no evidence to suggest that Sheehan had discriminatory intent in selecting Caleb over Plaintiff.

Even if Plaintiff had established a prima facie case, Individual Defendants proffer legitimate, non-discriminatory reasons for selecting Caleb over Plaintiff. The record shows Caleb had previously been a Refuse Laborer in the Department of Environmental Waste Management for approximately twenty years. Sheehan Dep. at 67:5-10; Harris-Marchesi Decl., Ex. TTT, Dkt. No. 111-3. As a custom, Refuse Laborers "get an opportunity to drive the [garbage] truck." Sheehan Dep. at 54:8-55:15. Sheehan had witnessed Caleb drive a garbage truck, albeit on only a

20

small number of occasions. *Id.* at 68:8-12. Further, Sheehan was not aware of Plaintiff's relevant experience driving a tanker truck for Magnum Cesspool. *Id.* at 61:3-15. Finally, Plaintiff does not assert in his brief that Sheehan hired Caleb for a pretextual purpose. *See generally* Opp.

Accordingly, the undisputed facts do not support Plaintiff's NYSHRL claim against Sheehan. Individual Defendants' Motion for Summary Judgment on Plaintiff's NYSHRL claim, as it applies to Sheehan, is granted.

### d. Riekert

Individual Defendants assert that Riekert had no "authority to hire and fire employees and thus may not be held individually liable . . . ." Mot. at 18. Plaintiff claims that Riekert engaged in discriminatory conduct as he was involved in conducting evaluations of Ice Rink personnel in 2012. Opp. at 17, 23. Again, Plaintiff alleges that the evaluations were administered as a pretext, "to conceal the fact that Plaintiff was going to be passed over for the HEO II positions." *Id.* at 17.

The parties agree Riekert performed the evaluations. Further, because the Court found a dispute of fact exists as to Boccard's liability, it is appropriate for the Court to assess whether Riekert may be liable for his involvement in the evaluation process as an aider and abettor. *See Soloviev*, 104 F. Supp. 3d at 253; *Redd*, 923 F. Supp. 2d at 392. To reiterate: the Town's Department of General Services had no formal policy concerning the evaluation of its employees; Riekert, upon his own decision or Boccard's instruction, conducted written evaluations of some or all of his employees at the Ice Rink; and Boccard saw the evaluations, making it plausible that the evaluations influenced his subsequent hiring decision for the HEO II positions. Given the foregoing, the Court finds that a dispute of material fact exists as to whether Riekert is liable as an aider and abettor under NYSHRL. *See Dunson v. Tri-Maint. &*

21

*Contractors, Inc.*, 171 F. Supp. 2d 103, 115-16 (E.D.N.Y. 2001) (denying summary judgment where individual defendants conducted investigation, allegedly to create pretext for employer's termination of plaintiff). Therefore, summary judgment is denied as to Plaintiff's NYSHRL claim against Riekert.

### e. Irving

Individual Defendants contend that "Irving had no involvement in any hiring decisions made in the Highway Department during her tenure as Deputy Superintendent." Mot. at 15. Plaintiff acknowledges in his 56.1 Statement that Naughton was Superintendent of the Highway Department when Plaintiff applied for the HEO II, Tree Trimmer I, and HEO I positions at issue, and that Naughton decided which applicants would fill these roles. Pl. 56.1 ¶¶ 27, 33, 71. However, Plaintiff also avers that Irving "had influence over the hiring decisions." *Id.* ¶ 95. To support his claim, Plaintiff cites letters he received from Irving regarding the HEO II and HEO I positions. *Id.* ¶¶ 95, D.153, D.178. The letters each state, "I have reviewed your application, and have appointed another individual to the position," and are signed by Irving. Harris-Marchesi Decl., Exs. LLL, QQQ, Dkt. No. 111-3. Naughton is copied on both letters. *Id.* The letterhead bears both Naughton's and Irving's names. *Id.*

As discussed above, where an individual lacks authority to hire, she may still be liable under NYSHRL as an aider and abettor. *See* NYSHRL § 296(6). Again, to be an aider and abettor, a co-worker must actually participate in the conduct giving rise to the discrimination claim. *Feingold*, 366 F.3d at 158. Further, to reiterate, liability must be found against the employer or principal before it can be found against the alleged aider and abettor. *See Soloviev*, 104 F. Supp. 3d at 253; *Redd*, 923 F. Supp. 2d at 392. Plaintiff does not bring any claims against Naughton and thus cannot establish aider-and-abettor liability for Irving. *See Setelius v. Nat'l*

22

*Grid Elec. Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *35 (granting summary judgment on discrimination, retaliation, and hostile work environment claims where plaintiff did not establish principal liability and therefore could not, by extension, establish defendant's liability as aider and abettor). The Court therefore grants Individual Defendants' Motion for Summary Judgment on Plaintiff's NYSHRL claim against Irving.

## III.   42 U.S.C. § 1983 Claim

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges Individual Defendants violated the Equal Protection Clause of the Fourteenth Amendment by "engag[ing] in . . . discriminatory conduct against Plaintiff in his employment, due to his race and color" and "commit[ing] the aforesaid unlawful acts . . . while acting under color of law." Am. Compl. ¶¶ 80-81, 84.

To establish individual liability under § 1983, "a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). Further, an "individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." *Id.* at 127 (citing *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Personal involvement can be shown by evidence of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

23

"Once the color of law requirement is met, a plaintiff's 'equal protection claim parallels his Title VII claim.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (citing *Feingold*, 366 F.3d at 159. That is, courts analyze § 1983 employment discrimination claims using the same *McDonnell Douglas* burden-shifting framework applied to NYSHRL claims. *See, e.g.*, *Clay v. Cty. Of Suffolk*, 404 F. Supp. 3d 737, 753 (E.D.N.Y. 2019) (explaining substantially same standard applies to NYSHRL and § 1983 claims); *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 251 (E.D.N.Y. 2012) ("To survive a motion for summary judgment, a plaintiff claiming discrimination under Title VII, the NYSHRL, and § 1983 must satisfy the tripartite burden-shifting test enumerated in *McDonnell Douglas* . . . ." (collecting cases)). However, a different burden of proof applies to the fourth prong of the test for a *prima facie* case. While a NYSHRL plaintiff bears a *de minimis* burden, the Second Circuit has stated that a § 1983 plaintiff "must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action . . . ." *Naumovski v. Norris*, 934 F.3d 200, 213-14 (2d Cir. 2019).

To the extent Individual Defendants were involved in the hiring processes for the positions to which Plaintiff applied, they were involved in their capacities as employees of the Town. Thus, they were acting under color of state law. *See, e.g.*, *Back*, 365 F.3d at 123 (defendant supervisors at public school acted under color of state law when they recommended against plaintiff's tenure); *Philippeaux v. N. Cent. Bronx Hospital*, 871 F. Supp. 640, 652 (S.D.N.Y. 1994) (defendant employees of public benefit corporation acted under color of state law when they hired a different applicant over plaintiff).

Earlier, the Court did not establish whether Irving participated in alleged discriminatory behavior concerning Plaintiff's rejections from the HEO II, Tree Trimmer I, and HEO I positions

24

in the Highway Department. Because personal involvement for § 1983 purposes is not predicated

on the liability of a principal employee with authority to hire, the Court will now assess whether

Irving directly participated in the alleged deprivations of Plaintiff's federal rights.

Courts in this Circuit have found personal involvement where individual defendants

signed correspondence related to an alleged deprivation of constitutional rights and also engaged

in other actions against the plaintiff. For example, in *Duse v. International Business Machines

Corp.*, the court denied summary judgment on the issue of a § 1981 defendant's personal

involvement in the allegedly discriminatory termination of the plaintiff, where that defendant

signed a letter terminating the plaintiff and was alleged to have previously approved the denial of

that plaintiff's promotion and denied that plaintiff's appeal of a reduced performance rating.

*Duse v. Int'l Bus. Machs. Corp.*, 748 F. Supp. 956, 968 (D. Conn. 1990); *see Patterson*, 375 F.3d

at 225 ("Most of the core substantive standards that apply to claims of discriminatory conduct in

violation of Title VII are also applicable to claims of discrimination in employment in violation

of § 1981."). The instant action is distinguishable, as Plaintiff does not allege that Irving engaged

in any specific acts beyond signing the letters that informed Plaintiff he was not hired for

positions in the Highway Department. Further, Plaintiff acknowledges that Naughton selected

the applicants that were to fill these positions. Pl. 56.1 ¶¶ 27, 33, 71.

Regardless, even if Irving were personally involved in the hiring decisions for § 1983

purposes, Plaintiff does not proffer evidence to show that his credentials were so superior to

those of Esposit, Gerolami, Rose, and Nieves that no reasonable employer would have hired

them over Plaintiff. First, Naughton selected Esposit, who is Caucasian, for the HEO II position

to which Plaintiff applied in February 2013. Harris-Marchesi Decl., Ex. B ¶ 14, Dkt. No. 111-1.

Esposit had a Class A CDL, had worked full-time in the Highway Department since 2005, and

had held the title of HEO I since 2010. Baisley Aff. ¶ 15; Harris-Marchesi Decl., Ex. BBB, Dkt. No. 111-3. Second, Naughton selected Gerolami, who is Caucasian, for the Tree Trimmer I position to which Plaintiff applied in February 2013. Harris-Marchesi Decl., Ex. B ¶ 15. Before being selected for the position, Gerolami had been working full-time in the Highway Department as an Auto Equipment Operator since 2007. Baisley Aff. ¶¶ 18-19; Harris-Marchesi Decl., Ex. GGG, Dkt. No. 111-3. Gerolami had a Class A CDL. Harris-Marchesi Decl., Ex. GGG. Third, Naughton selected Rose, who is Caucasian, and Nieves, who is Hispanic, for the HEO I positions to which Plaintiff applied in September 2013. Harris-Marchesi Decl., Ex. B ¶ 18. At the time, Rose had a Class A CDL and had been working as an Auto Equipment Operator for the Highway Department since 2007. Baisley Aff. ¶ 30; Harris-Marchesi Decl., Ex. PPP, Dkt. No. 111-3. Nieves had been a full-time employee of the Highway Department since 2004 and had held the titles of Auto Equipment Operator and HEO I. Baisley Aff. ¶¶ 28-29. Plaintiff does not articulate an argument as to why he is more qualified than any of the employees that Naughton selected. The closest Plaintiff comes to doing so is in his discussion of the Tree Trimmer I position in his Counter Statement of Facts. There, Plaintiff states that he had previous seasonal and part-time employment with the Town. Pl. 56.1 ¶ 161. This does not suffice to show the superiority of Plaintiff's credentials.

As explained in the Court's analysis of Plaintiff's NYSHRL cause of action, no reasonable trier of fact could conclude that Tyree and Sheehan engaged in unlawful discrimination in connection with the decisions not to hire Plaintiff. As to Boccard and Riekert, the irregularity of the evaluation process, which could plausibly have influenced Boccard's hiring decisions for the HEO II positions, raises a question as to the good faith of the evaluations and provides Plaintiff with an avenue for showing that discriminatory purposes affected the

26

hiring process. For these reasons, the Court finds that an issue of material fact exists as to whether discrimination was a but-for cause of the decision not to hire Plaintiff for the Department of General Services, HEO II positions to which he applied in February 2013.

For the foregoing reasons, Individual Defendants' Motion for Summary Judgment on Plaintiff's § 1983 claims is granted as to Tyree, Sheehan, and Irving, and denied as to Boccard and Riekert.

## IV.    Qualified Immunity Defense

Individual Defendants claim they are entitled to qualified immunity as to Plaintiff's § 1983 claims. Mot. at 16. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Government officials who raise a qualified immunity defense are "entitled to summary judgment when they can establish either '(1) a constitutional right was [not] violated or (2) the right was not clearly established [at the time of the violation].'" *Raspardo*, 770 F.3d at 113 (citing *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 543 (2d Cir. 2014)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks, citation omitted).

With regard to Boccard and Riekert, the evidence produces a genuine issue of material fact as to whether the employment evaluations and subsequent decision not to hire Plaintiff for a Department of General Services, HEO II position in February 2013 were influenced by discriminatory motives in violation of the Fourteenth Amendment. Thus, Boccard and Riekert

are not entitled to qualified immunity by way of establishing that a constitutional right was not violated. *See U.S. v. City of N.Y.*, 717 F.3d 72, 94-95 (2d Cir. 2013) (vacating summary judgment on qualified immunity grounds where trier of fact could reasonably find discriminatory intent on part of defendant government official). The parties do not dispute that the law prohibits discrimination against a job applicant based on his race. Boccard and Riekert therefore are not entitled to qualified immunity by a showing that the right at issue is not clearly established. Accordingly, summary judgment on grounds of qualified immunity is precluded as to Boccard and Riekert.

The Court has already found that Plaintiff has not offered evidence sufficient to prove constitutional violations on the parts of Tyree, Sheehan, and Irving. "Without an underlying constitutional violation, qualified immunity cannot attach." *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 219 (E.D.N.Y. 2009) (internal quotation marks and citation omitted). Thus, Individual Defendants' qualified immunity defense is moot as to Tyree, Sheehan, and Irving.

## CONCLUSION

For the foregoing reasons, Individual Defendants' request for dismissal for lack of personal jurisdiction is DENIED and Individual Defendants' Motion for Summary Judgment on Plaintiff's NYSHRL and § 1983 claims is GRANTED at to Tyree, Sheehan, and Irving, and DENIED as to Boccard and Riekert.

**SO ORDERED.**

_____/s/_____

Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
        March 4, 2021